GEORGIA NATIONAL BANK OF ALBANY *v.* REESE.

1. Where a borrower executes to a bank his deed to his home to secure a specified debt, and thereafter borrows from the lender a further sum secured by a chattel mortgage, and still later secures an additional advance of money from the bank, giving his collateral note for the total indebtedness due the bank, in which it is recited that the borrower has deposited with the bank as security for such note his chattel mortgage and his security deed, giving the date of the latter and a description of the land therein conveyed, this is a sufficient agreement in writing that this subsequent indebtedness is to be secured by such deed.

2. Such security deed is superior to a year's support subsequently set apart to the widow and minor children of the grantor, in his equity in the property thereby conveyed to his creditor, both as to the specific indebtedness to secure which such deed was executed, and as to such subsequent indebtedness.

3. The court erred in directing a verdict for the plaintiff.

No. 3747.  OCTOBER 12, 1923.

Equitable petition. Before Judge Munro. Dougherty superior court.   March 29, 1923.

*H. A. Peacock* and *G. B. Cowart,* for plaintiff in error.

*Claude Payton,* contra.

HINES, J.   J. F. Reese, on Jan. 17, 1917, executed to the Georgia National Bank of Albany his deed to his dwelling-house and lot, to secure the sum of $600 secured by his note of even date and falling due Oct. 15, 1917.   On May 30, 1918, he executed to this bank his mortgage note for $500, due Nov. 1, 1918.   This mortgage note embraced certain personal property.   On Oct. 15, 1920, he executed to this bank his collateral note for $1500, due Oct. 15, 1921.   This note embraced the amounts secured by the deed and the mortgage note, and an additional sum loaned the maker at the time of the execution of the $1500 note.   This collateral note contains this recital: "Having deposited herewith as collateral security mortgage dated May. 30th in favor of Georgia National Bank upon six mules, also mortgage dated 1/17/17, in favor of Georgia National Bank upon my home place in Dougherty County, Georgia."   This home place is the same property as that embraced in the security deed.   Both of these instruments were attached to this note for $1500.   Reese died in October, 1921.   His widow applied for, and had set aside to her and her minor children, out of his estate, a year's support, which embraced, among other property, "equity in home in which J. F. Reese lived at time of his death."   The home referred to is the property embraced in the security deed.   On Feb. 23, 1922, the widow paid to the bank on the lien on this home the sum of $567.36, taking from the bank a receipt reciting that the payment was made upon a note and mortgage on land held by the bank, leaving a balance of $32.64, besides interest from Oct. 15, 1917, on the principal of $600, being $48 per year.   Thereafter she tendered to the bank $242.64, being the remainder due on the original indebtedness secured by the security deed, which the bank refused to accept and to cancel said deed.   Thereupon she paid into the registry of the court said amount and brought her action to have the security deed canceled.

In its answer the bank alleged that the plaintiff's husband, on May 30, 1918, executed to it a mortgage note for $500, due Nov. 1, 1918, covering certain mules; that he executed a security deed to it, dated Jan. 17, 1917, to secure the sum of $600, being the in-

strument plaintiff seeks to have canceled in this proceeding; that on Oct. 15, 1920, plaintiff's husband executed to it a collateral note for $1500, due Oct. 15, 1921, the same being for the amounts due on the mortgage and the security deed; that it was the intention of plaintiff's husband and the bank that the property in the mortgage note and the real estate embraced in the security deed should be held by the bank as security until the $1500 note was fully paid; and that it was the intent of the maker to place the title to said real estate in the bank until all of said indebtedness was fully paid. The bank prayed that the court decree that the title to said real estate is in it until all of said collateral note for $1500, less a credit of $567.36, is fully paid. The plaintiff demurred to this answer, and the demurrer was overruled by the court. By an amendment the bank alleged " that it was the intention of J. F. Reese and the Georgia National Bank of Albany that the security deed executed on Jan. 17, 1917, should be extended to cover the entire indebtedness of $1500, and it was the purpose of the said Reese and the bank to make this deed security for the full amount of $1500, and the instrument as it appears on its face does not contain the true agreement of the parties. This transaction was had and made through an honest mistake of the law, as to the effect of the instrument, on the part of both parties, and as it now stands it places on the defendant an unfair burden and gives to the said Reese an unconscientious advantage." The bank prayed that the court reform this deed so as to make it conform to the intention of the contracting parties, and to extend it to cover the entire indebtedness of $1500, less the credit of $567.36; and prayed for a decree for a sale of this land in order to satisfy this indebtedness. The plaintiff demurred to the answer as amended, and the demurrer was overruled by the court.

Upon the trial of the case evidence was introduced by the bank, tending to establish the facts hereinbefore recited in reference to the chattel mortgage, the security deed, and the collateral note. The bank admitted the payment of $567.36 by the plaintiff on the original indebtedness secured by the security deed, and the tender by plaintiff of the balance of the principal and interest due on said indebtedness. At the conclusion of the evidence the trial judge directed a verdict for the plaintiff, and error is assigned upon this ruling.

Where a borrower executes to a lender a deed to land to secure a particular indebtedness, a subsequent indebtedness is not secured thereby, unless there is a stipulation to that effect in the deed, or unless there is a subsequent written agreement that such indebtedness shall be secured thereby. *Wylly* v. *Screven,* 98 *Ga.* 213 (25 S. E. 435) ; *Pierce* v. *Parrish,* 111 *Ga.* 725 (37 S. E. 79) ; *Fleming* v. *Ga. R. Bank,* 120 *Ga.* 1023 (48 S. E. 420) ; *Hester* v. *Gairdner,* 128 *Ga.* 531 (58 S. E. 165) ; *Carrington* v. *Citizens Bank,* 144 *Ga.* 52(5) (85 S. E. 1027) ; *Leffler Co.* v. *Lane,* 146 *Ga.* 741 (92 S. E. 214) ; *Loe* v. *Brown,* 155 *Ga.* 24 (116 S. E. 309). The security deed involved in this case does not contain any stipulation that it was executed or intended to secure any future indebtedness. No parol agreement to that effect will avail the bank. There must be a subsequent written agreement between the maker of this deed and the bank, evidencing the fact that the subsequent indebtedness was intended to be secured thereby, before the instrument will be enforced for that purpose. Does the record disclose such written agreement? The husband of the plaintiff was indebted to the bank on two scores. One was on a chattel mortgage for $500. The other was a note for $600 secured by this deed. He wanted an additional loan from the bank, which was granted. His two existing debts and the new loan amounted to $1500, for which he executed his collateral note. By the very terms of this collateral note, the maker deposited with the bank as security for this debt his chattel mortgage upon six mules, and " also mortgage dated 1/17/17, in favor of Georgia National Bank upon my home place in Dougherty County, Georgia." The record discloses that the instrument of this date from the debtor to the bank is a security deed, and not strictly a mortgage under our law; but the instrument in its essence is an equitable mortgage. Does this writing amount to an agreement that the debt evidenced by this collateral note shall be secured by this deed? It is not the case of the deposit of title deeds to secure money advanced to a debtor, which does not amount to the creation of an equitable lien in favor of the creditor. *Davis* v. *Davis,* 88 *Ga.* 191 (14 S. E. 194) ; *Pierce* v. *Parrish,* supra. This transaction amounts to more than that. The title to the land had been put in the bank by the security deed. The vendee therein stipulates in writing that this deed shall be held by the bank as security for the debt represented by the collateral note of $1500.

" When the new agreement was entered into, the title to the property was still in the creditor, and there was no reason why the parties could not enter into an agreement, which should be binding as between themselves, that the title, though conveyed as security for one debt, should stand as security for another. No particular form is required for an agreement to constitute a lien. It is sufficient if it clearly indicates the intention to create a lien, the debt to secure which it is given, and the property upon which it is to take effect. We think the agreement in question does this." *Wylly* v. *Screven,* supra. It can not be fairly held that it was the purpose and intention of the maker of this collateral note to give as security for this loan the mere physical possession of this deed. He agreed that this deed was to be held by this bank as security for the debt represented by this collateral note.

It is conceded by counsel for the plaintiff that this security deed is superior to the year's support. It follows that the court erred in directing a verdict for the plaintiff.

*Judgment reversed. All the Justices concur.*